## Ennis *v.* Pennsylvania Steel Co., Appellants.

*Contract—Freight—Variation—Allowance to charterer.*

Plaintiff sold to defendants iron ore to be shipped from Spain and delivered f. o. b. at Baltimore. The contract provided that the buyers should furnish "the steamers to load under this contract on a basis of nine shillings per ton, usual, present, gross form of London, Steamer iron ore charter, any variation to be for buyer's account. Sellers to attend to the chartering." The rate of freight fixed in the charter party was eight shillings per ton. *Held,* that the only variation in the charter party from the contract of sale was in the price of freight as such, and that the buyer was entitled to a credit of one shilling per ton only and not to the allowances made to the charterers for services for dispatch money, and the other allowances, earned by expedition in loading and unloading the cargo and speeding the ship's release from service.

Argued March 24, 1893.     Appeal, No. 240, Jan. T., 1893, by defendant, from order of C. P. No. 4, Phila. Co., Dec. T., 1891,

No. 367, making absolute a rule for judgment for want of a sufficient affidavit of defence.   Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and THOMPSON, JJ.

Assumpsit for balance under contract for sale of iron ore. Rule for judgment for want of sufficient affidavit of defence.

Plaintiffs' statement was as follows:

" This action has been brought to recover the sum of $3,566.82, with interest from Oct. 27, 1891, which the plaintiffs aver is justly due to them by the defendants, the Pennsylvania Steel Company, under the following circumstances :

" On the 20th of June, 1891, the plaintiffs made a contract in writing with the defendants, whereby the plaintiffs did agree to sell, and the defendants did agree to buy, six steamer cargoes of high grade manganiferous ore of the quality therein stated and at the price therein named.

" To be paid for in cash on presentation of invoice accompanied by certificates of weight and assay.   Shipment from Carthagena or Porman at seller's option, between August and January next, both inclusive, as the ore is ready for delivery to the steamers.   Place of delivery, f. o. b. Pennsylvania Railroad cars, Baltimore, Md., with other terms set forth in said contract, of which the only material ones to this case are as follows :

" ' Remarks.—It is understood and agreed that the steamers to load under this contract are to be furnished by buyers on the basis of nine shillings sterling per ton, usual present gross form of London steamer iron ore charter.   Any variation to be for buyer's account.   Sellers, Ennis & Co., to attend to the chartering.'

" That the plaintiffs before the twenty-seventh day of October, 1891, delivered to the said defendants, in accordance with the said contract, a cargo of iron ore per steamer, ' Kingsdale ' from Carthagena under a charter party, a copy of which is hereto annexed, which, by a previous arrangement, was accepted by the defendants on the cars of the Pennsylvania Railroad at Philadelphia instead of Baltimore.   The price of which, after allowing the defendants the difference between the freight rate of eight shillings per ton in the charter party of the ' Kingsdale ' and that named as the basis of the price in the contract, was $16,374.53, as set forth in the bill rendered.

" That the defendants have paid plaintiffs $12,807.71 of the amount of the said bill, and have refused to pay the balance thereof, $3,566.82, claiming a deduction of the sum of $1,582.50 from the price of this cargo and for an overpayment claimed to have been made of $1,984.32 for a cargo of ore previously imported by the steamer ' Baltimore City ' under the same contract and under a charter party similar in its provisions with that of the steamer ' Kingsdale,' for certain sums allowed to the plaintiffs for dispatch money and commissions under the terms of the said charter parties, which amount of $3,566.82 these defendants still retain.

" Plaintiffs further aver that the letters f. o. b. in the said contract have a well-known signification, namely, that all expenses and charges are to be borne by the sellers until delivered to the purchasers on the cars of the Pennsylvania Railroad ; and until such delivery the ore remains the property of the sellers, and at their risk.

" Plaintiffs aver that this contract was entered into by the defendants in accordance with a system of importing foreign ores into the United States—which has been established for many years—by which the seller agrees to import cargoes of ore, which the purchasers agree to accept in the cars of the railroad at the port of delivery in the United States, from steamers chartered by the sellers under the forms of iron ore charter parties of the steamships, by which certain benefits accrue to the sellers for dispatch money for promptness in loading and discharging the cargoes, through the exertions of the charterers, and allowing certain commissions and benefits to the charterers, the earnings of which enter into the price at which the seller agrees to deliver the ore to the purchasers, and without which the sellers could not undertake to deliver at the price named in the contract. And that such allowances to the charterers are independent of the freights named in the said charter parties.

" Wherefore the plaintiffs say the defendants are indebted to them in the sum of $3,566.82, with interest from the twenty-seventh day of October, 1891.

The charter party contained the following clause :

" Freight to be paid at the following rate, British sterling: Eight shillings (8) per ton of 2,240 lbs. delivered (less two

and a half per cent address commission payable to charterers) on right delivery of the whole cargo, in cash at current rate of exchange for sixty days bills on London, ruling on date of ship's entry at custom house, in full primage, consulage, port charges, trimming, pilotage, towage, etc., as customary."

The affidavit of defence was as follows :

" The deponent is advised, and so avers, that under the contract between the plaintiffs and the defendant declared upon, the cost of furnishing steamers for the transportation of ore called for in the contract was to be borne by the defendant, and that the plaintiffs, by virtue of the said contract, stipulated to become the agents of the defendant to attend to the chartering of the necessary steamers for the defendant; that the plaintiffs in entering into the charter party of September 23, 1891, with the owners of the steamer ' Kingsdale,' and in entering into a certain other charter party with the owners of the steamer ' Baltimore City,' upon a certain prior date, as set forth in the statement, acted as agents for the defendant; that all benefits, advantages, and savings accruing to the charterers named in the said charter parties by the terms thereof, or otherwise, whether by way of dispatch money, commissions, rebates, or other advantages which should be earned from the time of the commencement of loading to the final discharge of the steamers, became and were the property of the defendant.

" The deponent is informed and believes, and expects to be able to prove, that the plaintiffs received from the owners of the steamer ' Baltimore City,' up to and including the time of delivery of the cargo, sums of money aggregating $1,984.32, as dispatch money, commissions, rebates and other allowances as provided for in the charter party, and that the plaintiffs received from the owners of the steamer ' Kingsdale,' up to and including the time of delivery of the cargo, sums of money aggregating $1,582.50, as dispatch money, commissions, rebates, and other allowances as provided for in the charter party, the said sums aggregating $3,596.82, which sum and sums became and were the property of the defendant, and should have been accounted for to it.   The plaintiffs received from the defendant settlement in full of their bill rendered for the ore delivered by steamer ' Baltimore City ' without accounting for and allowing to the defendant a deduction of the said sum of

$1,984.32, to which it was entitled as stated, whereby the said sum became and was, and now is, justly due and owing the defendant by the plaintiffs, and is, as this deponent is advised, a proper item of set-off to the present claim ; and the plaintiffs, in their bill rendered, the balance of which is claimed in this suit, did not credit the defendant with the sum of $1,582.50, received by them as aforesaid for the defendant.

" Wherefore the deponent avers that a sum of money equal to the whole of the plaintiffs' claim is now due and owing the defendant by the plaintiffs, and that nothing is now due and owing the plaintiffs from the defendant.

" It is not true, as averred in the plaintiffs' statement, that the contract declared upon was entered into by the plaintiffs in accordance with a system of importing foreign ores into the United States, whereby the seller became entitled to certain benefits for dispatch money and other benefits by way of commission, provided for in the charter party. On the contrary, the defendant entered into the contract declared upon in the full expectation and belief that all benefits accruing to the charterer, whether by way of dispatch money, commissions, or otherwise, in connection with the chartering of any vessels procured by the plaintiffs for the defendant under the terms of the contract, should be and become the sole and exclusive property and right of the defendant."

A supplemental affidavit of defence further averred :

" That $1,984.32 of the claim in suit, being the sum mentioned in the affidavit of defence heretofore filed as the amount of money obtained by the plaintiffs from the owner of the steamer ' Baltimore City ' as dispatch money, commissions, rebates, and other allowances, was paid by the defendant to the plaintiffs at the time of the settlement with the plaintiffs on the shipment by the ' Baltimore City,' without knowledge, or means of knowledge, by the defendant of the fact of such moneys having been received by the plaintiffs from the owners of the said steamer, and knowledge of such moneys having been received by the plaintiffs was only obtained by the defendant immediately prior to the commencement of this suit.

" The defendant was therefore unable to claim the set-off herein claimed, prior to the bringing of the present suit."

Rule for judgment for want of sufficient affidavit of defence was made absolute. Defendant appealed.

*Error assigned* was entry of judgment.

*Geo. Tucker Bispham, A. H. Wintersteen* and *Wayne Mac-Veagh* with him, for appellant.—Plaintiffs under the contract were bound to account to defendant for all savings in the net cost of the vessels below nine shillings per ton. The contract, interpreted according to its terms, fixes an estimated entire cost of transportation, and gives to the buyer everything moving from the ship owner in reduction of that cost. Even if the estimated "nine shillings" referred only to technical freight, the moneys received by plaintiffs from the vessel, as set forth in the affidavit of defence, are of the nature of reductions in freight, and go to defendant.

The attempted answer that the variation stipulated for related only to variation in technical freight, and that these credits by the ship owners were not of the nature of freight, is without weight. As to the address commission of two and a half per cent, the charter itself fixes the freight at eight shillings, less the address commission. The address commission is therefore specifically made an element in the freight.

As to the dispatch money, the meaning of the terms must be noted. Freight is the sum agreed on for the hire of a ship entirely or in part, for the carriage of goods from one port to another: 13 East, 300. Lay-days are the estimated lay or running days for loading or unloading the cargo: 3 Kent, Com. 202. Whether or not dispatch money is a deduction from the freight or is an allowance independent of it, depends upon whether or not freight is compensation for the whole of the voyage including lay-days. The affirmative has been definitely decided by this court in Lacombe v. Waln, 4 Bin. 299. It was there ruled that as freight was payable only on delivery of the cargo (as in the present charter) it was not earned before delivery, and, a loss occurring during the lay-days in port, no freight was recoverable: Brown v. Ralston, 9 Leigh (Va.), 532; Earnshaw v. McHose, 48 Fed. R. 589. Plaintiffs by the terms of the contract became defendants' agents to charter the vessel.

*Morton F. Henry,* for appellees.—The question turns upon what was meant by "any variation to be for buyer's account." It meant precisely what it said—variation in the freight rate

from the basis of nine shillings per ton. If the freight rates were higher or lower, it was for the benefit or disadvantage of the purchaser. It is not possible to interpret freight, as the defence attempts to do, as the sum which remains after deducting from the stipulated rate of eight shillings per ton the amount of dispatch money and commissions on charter, earned by attendance to the ship's business under the terms of the charter party.

Freight is the sum payable by the consignee on the delivery of the goods at destination, for which the consignee becomes personally liable by acceptance, although he did not contract to pay it: Lemont v. Lord, 52 Me. 365; Blanchard v. Page, 8 Gray, 281.

The words f. o. b. are terms of trade which signify that the ore shall be delivered to the buyer by the purchaser, free of all antecedent charges and expenses whatsoever, and so that the property itself, until such delivery, shall not vest in the buyer, but remain that of the seller and at his risk until delivery on the cars, and the buyer has not an insurable interest in the cargo while at sea, nor is he subject to any sea risks under such contract of sale : Browne v. Hare, 3 H. & N. 484; Stock v. Inglis, 12 Q. B. D. 564; Pollock on Contracts, 360 ; Mill Dam v. Hovey, 38 Mass. 441. In no sense can the word " freight," payable by the party receiving the goods shipped under a bill of lading, be termed the cost of transportation. It is an element of the cost of the goods to the importer. Maclachlan on Merchant Shipping, 435; Foard's Law of Merchant Shipping, 537 ; Bruncker v. Scott, 4 Taunton, 1; Evans v. Forster, 1 B. & Ad. 118; Winslow v. 400 Bbls. Salt, 1 Bissell, 459 ; Carver on Carriage by Sea, 637; Smith v. Sieveking, 4 E. & B. 945 , Steamship v. Sharp, 24 Q. B. Div. 158. Dispatch money is not an allowance in the reduction of freight.

OPINION BY MR. JUSTICE WILLIAMS, April 10, 1893 :

The question presented in this case is one of construction of a written agreement between the parties. The plaintiffs sold to the defendants six steamer cargoes of " high grade manganiferous iron ore " in June 1891. The ore was to be shipped from Carthagena or Porman, Spain, to the defendants in Pennsylvania, and delivered f. o. b. on the cars of the Penna. Rail-

road Co., at Baltimore, Md. The contract provided that the buyers should furnish " the steamers to load under this contract on a basis of nine shillings per ton, usual, present, gross form of London, Steamer, iron ore charter, any variation to be for buyer's account. Sellers to attend to the chartering." One of the steamers furnished was the " Kingsdale." The rate of freight fixed in the charter party was " British Sterling : Eight shillings per ton of twenty-two hundred and forty pounds delivered (less two and a half per cent, address commission, payable to charterers), on right delivery of whole cargo." The sellers on settlement of account for this cargo credited the account of the buyers with one shilling per ton, the difference between the rate of freight in the contract of sale, and that secured from the steamer Kingsdale, and asked payment of the balance. The buyers claimed in addition to the amount so allowed all the allowances made to the charterers for services, for dispatch money, and the other allowances, earned by expediting the loading and unloading the cargo and speeding the ship's release from service. This claim rests on the construction of the words quoted above from the original contract of sale, " any variation to be for buyer's account." The only variation that appears to have been made in the charter party, from the contract of sale, is in the price of freight as such. This is reduced from nine shillings sterling to eight, and the variation has been carried to the buyer's credit. The contention of the appellants is however that the words " any variation " should be construed as though they were followed by the words " in the actual cost of transportation from the said price of nine shillings per ton." The contract does not say so, nor are its provisions consistent with such an interpretation. The contract contemplates, and provides for the chartering of six steamers, and the use of a particular form of charter. It fixes nine shillings as the basis for freight per ton, under the provisions of the " usual present gross form of London steamer Iron Ore charter."

The form of charter was used without variation, so far as appears, but there was a variation in the price of freight and in that alone. As this has been carried to the buyer's credit they have nothing further to ask under their contract, and the judgment of the court below should be affirmed.