## Ascherson et al., trading as Naylor & Co., v. Bethlehem Iron Co., Appellant.

## Same v. Pennsylvania Steel Co., Appellant.

*Contract—Freight—Variation—Allowance to charterer.*

Plaintiffs sold to defendant iron ore to be shipped from the Island of Elba, and delivered free on board cars in this country. The price was to be " eleven and a half cents per unit of metallic iron per ton of twenty-two hundred and forty pounds of ore." The contract provided that " the above price is based upon a rate of ocean freight of eleven shillings per ton, the buyers to receive or pay any differences; such differences to be settled by their receiving or paying actual differences between eleven shillings and the rate of freight paid on deliveries to them." *Held* that the words " such differences " referred to differences in the rate of ocean freight, as freight, and not to freight charges as diminished by dispatch money. In such a case the seller was to deliver free on board cars, and to assume all expenses, and all risks except the risk of freight strictly so called. Ennis v. Pennsylvania Steel Co., 154 Pa. 138, applied.

Argued Jan. 15, 1894. Appeals, Nos. 181 and 164, Jan. T., 1893, by defendants, from order of C. P. No. 4, Phila. Co., March T., 1893, No. 979, and June T., 1893, No. 263, making

absolute rule for judgment in favor of Edward Ascherson et al., trading as Naylor & Co., for want of sufficient affidavit of defence. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and FELL, JJ. Affirmed.

Assumpsit for iron ore sold and delivered.

The material portions of the contract under which the ore was sold are as follows:

"Contract concluded this 18th day of June, 1890, between Naylor & Co. of New York, who agree to sell, and the Bethlehem Iron Co. of Bethlehem, Pa., who agree to purchase one hundred and sixty thousand (160,000) tons, say 160,000 tons more or less of Elba iron ore, half each to be Elba Lavato and Elba Andante iron ore, on the following terms, viz.:

"Shipment to be made from abroad forty thousand (40,000) tons each of Lavato and Andante during each year, June, 1890, to June, 1891, and June, 1891, to June, 1892. Shipments during each year of each kind of ore to be made regularly in as nearly as possible equal quarterly quantities, but sellers will modify this in such manner as requested by buyers, as far as sellers' purchase contract will permit.

"Delivery to be made on cars of the Lehigh Valley and or Philadelphia & Reading railroads at Philadelphia and or Perth Amboy, at Naylor & Co.'s option.

"The price is to be eleven and one half cents per unit of metallic iron per ton of 2240 lbs. of ore. For purposes of settlement, the moisture in the ore, dried at 212 degrees Fahrenheit as determined by the chemist, is to be deducted from the weight.

"The above price is based upon a rate of ocean freight of eleven shillings per ton (conditions as per Naylor, Benzon & Co.'s usual form of charter party), the buyers to receive or pay any differences; such differences to be settled by their receiving or paying actual difference between eleven shillings and the rate of freight paid on deliveries to them."

By the charter party covering the shipment of the particular cargo in question, the appellees stipulated therein to pay to the vessel "freight at the rate of eight shillings and nine pence per ton of twenty hundred weight delivered at port of discharge."

The freight payable was, however, to be reduced in the event.

of less time than was contemplated being required for the loading or unloading of the vessel, the clause of the charter party providing for this reduction being as follows : " Dispatch-money at port of loading and or discharge to be paid at the rate of £15 per day for all time saved."

Plaintiffs' statement, after reciting the contract, averred :

" Under the contract so made, the plaintiffs delivered to the defendants, or to their order, thirty-three hundred tons, more or less, of said ore, on or about the twenty-fifth day of October, 1891, and the plaintiffs did render a bill to the defendants for the price of said cargo, based upon the rate of freight paid by them under said contract, and named in the charter party for the vessel carrying said cargo, according to the amount named in Exhibit C, and the defendants have made payment of the bill so rendered in the amount of $17,000, for which credit is given in said Exhibit A, but the defendants have declined to make payment of the full price of the said ore based upon the rate of freight paid and named in said charter party claiming the right to deduct from the rate of freight so named and paid the sums allowed to the plaintiffs for dispatch-money and commissions under the terms of said charter party in consideration of the skill and labor in securing prompt loading and unloading of the vessels and of other services, and the defendants have deducted and retained said several amounts so computed, and particularly specified in Exhibit A ; and the plaintiffs do aver that the claim of the said defendants is not in accordance with the terms of the contract or the custom of business or the course of dealing between the parties. The plaintiffs aver that as delivery was to be made on the cars of the Lehigh Valley Railroad Company or the Philadelphia and Reading Railroad Company, all expenses and charges were to be paid by the sellers until such delivery, and the ore remained their property and at their risk till said delivery was complete. The ' rate of freight ' mentioned in said charter party is a commercial term of recognized meaning, and is the subject of quotation upon the maritime exchange in the same manner as the rate of exchange is quoted among bankers, and into this rate dispatch-money, commissions or demurrage paid under the charter party do not enter, and the meaning of the words, the custom of business, and the terms and conditions of Naylor, Benzon & Co.'s

charter party, were well known to or fully brought to the notice of the defendants prior to the making of the contract, prior to June 18, 1890, by the incorporation by reference or annexation to the contract of said charter party ; and with this knowledge, or after full notice, the defendants made settlement for the cargo of ore delivered under said contract prior to December 22, 1891.   Wherefore the plaintiffs say that the defendants are indebted to them in the sum of $4,249.02, with interest as aforesaid, and therefore they bring suit."

The affidavit of defence, by defendant's president, averred:

"The sum of $4,249.02, claimed in this action, was the amount estimated by defendant to be the total amount of dispatch-money, commissions, rebates, and other allowances which accrued under the terms of the charter party of the said steamer 'Leven' (being a charter party in form as set out in plaintiffs' statement), and which to that amount diminished the actual rate of freight paid on said cargo of ore.   And deponent is advised, and therefore avers, that, under the terms of the said contract of June 18, 1890, all the aforesaid were the property of defendant and should be credited to defendant by plaintiffs in making up the accounts of the transaction.   Defendant therefore claimed that the bill rendered (Exhibit A, attached to plaintiffs' statement) was incorrect and excessive, and so paid $17,000 to defendant which was correctly charged, but declined to pay the said sum of $4,249.02, the balance of said bill.   Defendant is not informed and has not the means of exact information as to the precise amount of dispatch-money, commissions, etc., but estimates that the amount retained as aforesaid was the amount thereof.   And deponent claims that defendant's claim as aforesaid is in accordance with the terms of the said contract, which provides for the payment of 'actual differences between eleven shillings and the rate of freight paid on deliveries.'   And deponent avers that to his knowledge there is no custom of business governing business done in the importation of ores, of such universality and force as to overcome or vary the provisions of a written agreement ; that the business herein referred to was done under the written agreement above referred to and made part hereof.   And deponent denies that defendant's course of dealing under said contract of June 18, 1890, has been such as now to prevent it from

claiming the aforesaid credit of $4,249.02, as it has, since October, 1891, made no settlements with plaintiffs on the basis as set out in plaintiffs' statement that plaintiffs claim they are entitled to, but has, on the contrary, during all that time claimed that settlements should be made under the provisions of the aforesaid written agreement as construed by defendant, allowing to defendant the dispatch-money and other allowances which it now claims to retain; and it has during that time made no settlements on the basis now claimed by plaintiffs to be correct."

A supplemental affidavit of defence averred "that there is no rule existing in the mercantile and commercial world so well established as to amount to a usage or custom, in the legal sense of those terms, which would sustain the contention of plaintiffs, as set out in their statement of demand filed in this case; that in determining the 'rate of freight' paid upon any shipment, dispatch-money, commissions, etc., are not to be taken into account.

"This deponent further states that if the plaintiffs, in point of fact, did retain any dispatch-money, commissions, etc., accruing under the shipments made prior to October, 1891, knowedge of this fact was not imparted by plaintiffs to this deponent or to the defendant herein, nor had he or it any actual knowledge thereof at the time."

In the case of Ascherson et al. v. Pennsylvania Steel Company, the facts were identical with those in Ascherson v. Bethlehem Iron Company. In both cases the court made absolute a rule for judgment for want of a sufficient affidavit of defence, in an opinion by ARNOLD, J., 2 Dist. R. 597.

*Error assigned* in both cases was above order.

*Francis I. Gowen*, for Bethlehem Iron Co., appellant, cited: Lacombe v. Waln, 4 Bin. 299; Earnshaw v. McHose, 56 Fed. R. 606; Gullischen v. Stewart Bros., L. R. 13 Q. B. D. 317.

*Wayne MacVeagh, A. H. Wintersteen* with him, for Pennsylvania Steel Co., appellant, cited: Ennis v. Penna. Steel Co., 154 Pa. 138; 3 Kent, 219; 2 A. & Eng. Ency. L. 878; The Glendevon, L. R. Probate Div. 1893, p. 269; Marshall v. Bolckow, L. R. 6 Q. B. Div. 231.

*Samuel Dickson* and *John G. Johnson,* for appellees, cited: Foard, Law of Merchant Shipping, 537; Steamship City of Lancaster v. Sharp & Co., L. R. 24 Q. B. Div. 158; Pottsville Iron & Steel Co. v. Ascherson et al., U. S. C. C. Ap., E. Dist. Pa., No. 18 Sept. T., 1893, unreported.

OPINION BY MR. JUSTICE FELL, April 9, 1894:

This case comes directly within the ruling in Ennis v. Pennsylvania Steel Co., 154 Pa. 138. The plaintiff in each case agreed in writing to sell iron ore to be shipped from Mediterranean ports and delivered free on board cars in this country, and in both the prices were based on freight charges, and the forms of charter parties, showing what commissions and allowances the charterer was entitled to receive, were incorporated in the contracts. The controversy in that case, as in this, related to the right as between the buyer and the seller to the dispatch-money, and was to be determined by the written agreement between the parties. In the case of Ennis v. Pennsylvania Steel Co., supra, the contract provided: " It is understood and agreed that the steamers to load under this contract are to be furnished by buyers on the basis of nine shillings sterling per ton usual present gross form of London steamer iron ore charter; any variation to be for buyers' account, sellers, Ennis & Co., to attend to the chartering." In this it reads: " The above price is based upon a rate of ocean freight of eleven shillings per ton (conditions as per Naylor, Benzon & Co.'s usual form of charter party), the buyers to receive or pay any differences; such differences to be settled by their paying or receiving actual difference between eleven shillings and the rate of freight paid on delivery to them."

In one case it was agreed that any variation in freight was to be for the buyer's account, and in the other that the difference in rate of freight was to be settled by the buyer receiving or paying the difference. There is no substantial difference between these contracts.

In construing the Ennis contract it was decided that the words " any variation " meant any variation in freight, and not any variation in the actual cost of transportation; and in the contract in this case the words " such differences " refer to differences in the rate of ocean freight, as freight, and not to freight charges, as diminished by dispatch-money. The con-

trolling thought of the contract in this regard is that the seller is to deliver at Philadelphia or Perth Amboy, and to assume all expenses and all risks except the risk of freight strictly so called.  If this clause had been omitted from the contract the buyer would have paid the exact price stipulated without deduction or addition, and the seller's profit would have been the profit on that price, increased by dispatch-money or lessened by demurrage.  That the actual cost of transportation would vary from the rates of ocean freight was almost certain in the delivery by vessels of 160,000 tons of ore and extending over a period of two years.  There was danger of ruinous charges for demurrage, and the earning of dispatch-money depended upon the energy and foresight of the seller.  There was but a chance of doing this, and there could be no reasonable expectation that it would ever be more than a chance unless the party whose skill and vigilance could improve it would be benefited thereby.

When therefore the parties stipulated for a price based on a rate of ocean freight of eleven shillings per ton, and gave the buyer the benefit or burden of the difference, they meant the freight rate strictly so called, and not the net cost of transportation.  The freight rate would be diminished by dispatch-money or increased by demurrage, but these were unknown quantities upon which nothing could be based.  They were risks which might result in gain or loss, but to the extent to which they were not purely chances, they depended upon the action of the seller.  It is conceded that the plaintiffs would have borne the burden of demurrage charges, and they are entitled under the contract to the benefit of the dispatch-money.

The judgment is affirmed.